## Heacox v. Polce

*Louis C. Glasso* and *John E. Caputo*, for plaintiff.
*Wallover & Barrickman*, for defendant.

REED, P. J., October 25, 1957.—Plaintiff, Warner Heacox, brought this action in trespass against Joseph F. Polce, defendant, to recover damages for personal injuries sustained when he was struck by an automobile owned and operated by defendant. The jury returned a verdict which read as follows:

"And now, to wit: Feb. 6, 1957, we, the Jurors empounded in the above entitled case, find no negligence on part of Defendant Proven. We therefore find for the Defendant".

Plaintiff has moved for a new trial contending that "the verdict was against the evidence."

The accident happened October 13, 1955, at about 11 p.m., e.s.t., at the intersection of Route 88 and Thirteenth Street, in the Borough of Conway.

Route 88 is a 50-foot four lane highway composed of two 12-foot lanes running in a northerly direction and two 12-foot lanes running in a southerly direction

with a 2-foot medial strip dividing the northerly and southerly lanes. Thirteenth Street is 12 feet in width and intersects with Route 88 on its easterly side, forming a "T" intersection. A street light is located at the northeast corner of the intersection and was burning at the time of the accident. Immediately opposite the Thirteenth Street intersection, on the westerly side of Route 88, a pathway leads down an embankment to Conway Yards of the Pennsylvania Railroad Company. The speed limit on Route 88 within the Borough of Conway is 35 miles per hour. It had rained during the day and visibility was described by the witnesses as "clear" and "fair".

Prior to the accident plaintiff had been at the Conway Hotel, located on the easterly side of Route 88 at Fourteenth Street. When he left there he walked southwardly on the easterly side of Route 88 to Thirteenth Street and crossed to the westerly side of Route 88. When he reached a point on the berm on the westerly side of Route 88 he heard a fellow worker, Rafferty, calling from the easterly side of Route 88 at the intersection and saying something to him and by reason thereof he decided to join Rafferty. Plaintiff, Heacox, testified that before crossing the intersection he looked to the south, then to the north, and saw headlights coming from the north at a distance of 900 to 1,000 feet away, traveling in the westerly lane of the southbound lanes of travel. He started to cross the highway, walking normally, neither fast nor slow, traveling at a pace of two and one-half feet or better to each step. As he walked he continued looking northwardly at practically every step. When he crossed the west lane of the southbound lanes the automobile still continued to approach in the westerly lane; he continued to walk and when he reached the center of the east lane, that is, he had taken two or three steps into

the east lane of the southbound lanes, the automobile was bearing down on him. He testified that the automobile at this time was then so near that he was afraid, or he was alarmed, and he froze and then stepped back two steps and was struck by the right front side of the automobile.

There was conflicting testimony as to the happening of the accident and as to whether plaintiff looked in crossing the intersection. Mrs. Grace Himelsbaugh, a disinterested witness, testified that when Rafferty called to plaintiff, plaintiff just turned "real fast and stepped out", that he did not look to the north, he just turned around, walked that quick". Chief of Police Joseph Sabol, who investigated the accident, testified that he talked with plaintiff about one hour after the accident at the hospital and at that time plaintiff told him that "he didn't see the car coming until it was right on him."

Defendant, Polce, testified that he was driving in the westerly lane of the south bound lanes of Route 88 at a speed of approximately 35 miles per hour as he approached Fourteenth Street intersection and after passing Fourteenth Street intersection he crossed from the westerly lane to the easterly lane of the southbound lanes with the intention of making a left turn at Eleventh Street. As he approached Thirteenth Street intersection he was traveling at a speed of 25 to 30 miles per hour and saw no person on the highway until the impact and that after the impact his car traveled a short distance. The witness, Grace Himelsbaugh, fixed the distance the car traveled after the impact at a car's length.

In the trial of any action based on negligence it is incumbent upon plaintiff to present a prima facie case of negligence on the part of defendant. However, when the testimony is closed and the issues submitted for

determination, the jury must consider all of the evidence produced by both plaintiff and defendant in determining negligence and contributory negligence and so arrive at their ultimate verdict. "After verdict it is peculiarly within the province of the trial judge, who heard and observed the witnesses, to determine whether the jury's conclusion was against the weight of the credible evidence . . .": Knies v. Kraftsow, 156 Pa. Superior Ct. 206, 301. "A new trial will not be granted because of a mere conflict in testimony . . . or because the trial judge on the facts would have arrived at a different conclusion . . .": Decker v. Kulesza, 369 Pa. 259, 264.

From this brief review of the testimony as to the circumstances surrounding the accident and as to the operation of defendant's automobile it becomes readily apparent that it is conflicting. Resolving the testimony was for the jury in the first instance and secondarily for the court. The jury having resolved it against defendant we are not persuaded, by reason of its conflicting nature, that their decision was not supported by the credible evidence.

While not assigned as a reason for the allowance of a new trial in the motion filed, plaintiff in his brief asserts that the court committed reversible error in not permitting plaintiff to testify as to the speed of defendant's car. A witness may be permitted to give opinion testimony as to the speed of a vehicle if he presents the requisite qualifications, viz., an observation of the vehicular movement in question and a recognition of impressions of like vehicles at relative speeds: Shaffer v. Torrens, 359 Pa. 187, 193. In this respect, plaintiff testified as follows:

"A. Well, I looked. As I said, I saw headlights in the distance, but they seemed far distant to me. I started to cross the highway. I was paying more attention to the north than to the south, of course, but

in the southbound lane I looked several times. I saw that this car was approaching closer, but it didn't seem too close to me, and I crossed the divider; that is the dividing strip of the southbound lane. I looked again, and he still didn't seem too close, so I stepped into the inside southbound lane.

"Q. Let me stop you there. At the time you reached the dividing strip between the two southbound lanes and you say you looked again, in what lane was this car approaching?

"A. He was approaching in the outside southbound lane.

"Q. Would that be the side nearest the railroad tracks?

"A. That is right, the side on the railroad side.

"Q. All right. Then what happened?

"A. When I stepped into the inside southbound lane, I took possibly another step, and then when I looked, why, the car was bearing down on me then directly. It just seemed to—I don't know. He just seemed to accelerate the speed of the car, but he was practically on top of me at that time."

It thus appears from plaintiff's testimony that from the time defendant crossed from the westerly to the easterly lane of the southbound lanes at about Fourteenth Street until the time of the impact plaintiff had not observed the speed of defendant's automobile. When plaintiff stepped into the easterly lane of the southbound lane and then looked, the automobile was bearing down upon him. In fact plaintiff testified "he was practically on top of me at that time." It is, therefore, apparent that plaintiff had not sufficient time to observe the speed of defendant's automobile immediately before the impact.

Aside from the fact that it is difficult to determine speed by the speed of an approaching headlight, it is evident from a reading of plaintiff's testimony that

if he had been permitted to testify, it would not have been an opinion but a mere guess on his part. We find that the trial judge's ruling in this respect was proper.

For these reasons, we will enter an order dismissing plaintiff's motion for a new trial.

### Order

Now, October 25, 1957, plaintiff's motion for a new trial is refused and it is ordered and directed that judgment be entered in favor of defendant upon payment of the jury fee.

Same day, exception granted and bill sealed to plaintiff.